```
                    UNITED STATES DISTRICT COURT

                   CENTRAL DISTRICT OF CALIFORNIA

CHRISTINE O. SANCHEZ,        )    NO. EDCV 05-00460-CT
                             )
            Plaintiff,       )    OPINION AND ORDER
                             )
       v.                    )
                             )
JO ANNE B. BARNHART,         )
COMMISSIONER, SOCIAL SECURITY)
ADMINISTRATION,              )
                             )
            Defendant.       )
                             )
_____)
```

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

## SUMMARY OF PROCEEDINGS

On June 8, 2005, plaintiff, Christine O. Sanchez ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On August 12, 2005, the parties filed a consent to proceed before the magistrate judge. On September 16, 2005, plaintiff filed a brief in support of the complaint. On October 17, 2005, the Commissioner filed

a brief with points and authorities in opposition to relief requested in complaint.

**SUMMARY OF ADMINISTRATIVE RECORD**

1.  Proceedings

On January 30, 2003, plaintiff, who worked as a child care attendant for more than 30 years, filed an application for benefits, alleging disability since January 21, 2003, due to brain damage resulting from meningitis that she contracted as an infant, depression, and mental disturbance. (TR 51, 68, 77).[1] The application was denied initially and upon reconsideration. (TR 20).

On July 23, 2004, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 37). On December 10, 2004, plaintiff, represented by an attorney, appeared and testified at a hearing before an ALJ. (TR 154-165). On February 4, 2005, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because she could perform her past relevant work as a child care attendant and thus, the ALJ concluded, she was not eligible for benefits. (TR 11-17). On February 22, 2005, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 7). On April 28, 2005, the request was denied. (TR 4-6). Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2

2.  <u>Summary of Evidence</u>

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in this case.

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ's decision denying benefits to plaintiff should be reversed or the matter should be remanded for the following reasons:

1. In coming to his decision the ALJ failed to properly consider the opinion of disability by plaintiff's treating physician, Dr. Gregory A. Cohen; and,

2. The ALJ failed to properly consider the testimony of plaintiff's father.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards.  <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance. <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner.  <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).  The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g).  Remand is appropriate where additional

3

proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

**DISCUSSION**

1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden

4

shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to benefits only if the person is unable to perform other work. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

2. Treating Physician

Plaintiff contends that the ALJ failed to properly consider plaintiff's treating physician's opinion that plaintiff is disabled by her mental impairments.

A mental impairment, such as depression or psychoneurosis, may constitute a disability within the meaning of the Act. See Briggs v. Sullivan, 954 F.2d 534, 535 (9th Cir. 1992). However, the mere presence of a mental impairment does not establish entitlement to benefits. In order for plaintiff to recover benefits, the evidence must establish that the impairment is accompanied by a physiological or functional loss establishing an inability to engage in substantial gainful activity. Barker v. Secretary of Health and Human Servs., 882 F.2d 1474, 1477-78 (9th Cir. 1989). Alleged mental impairments are evaluated under the same five-step sequential analysis as physical impairments.

The ALJ found that plaintiff has a "diminished cognitive function and affective disorder," which constitute "severe" mental impairments but do not qualify as listed impairments. (TR 16-17). However, the ALJ determined that plaintiff is not disabled because she can perform her past relevant work as a child care worker.[2] Id. In coming to his

---

[2] Plaintiff's father reported that plaintiff qualified for Supplemental Security Income ("SSI") benefits when she was young. (TR 92). Her family, however, thought that it would be good for her self esteem to work and so she started working for the Montebello School District as a child care attendant. Id. She

conclusion, the ALJ rejected the opinion of Dr. Gregory Cohen, a psychiatrist retained by plaintiff to evaluate her for her social security disability claim.[3] (TR 15, 148-151). In a July 24, 2003 letter and June 22, 2004 diability report, Dr. Cohen opined that plaintiff's mental impairments rendered her totally disabled.

"The treating physician's opinion is not [] necessarily conclusive as to either a physical condition or the ultimate issue of disability." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The weight given a treating physician's opinion depends, in part, on whether it is supported by sufficient medical data and is consistent with other evidence in the records. 20 C.F.R. §§ 404.1527, 416.927.

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d at 751). However, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for doing so which are supported by substantial evidence. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)). See also Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001).

Further, "[a]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole," or "by objective medical findings." Batson v. Commissioner of the Social

---

held that job for over thirty years until she began having emotional problems due to a real estate dispute and lawsuit with her brother. Id.

[3]The record contains two copies of the July 24, 2003 psychiatric evaluation of Dr. Cohen. (TR 150-153).

6

Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that the ALJ did not err in giving minimal evidentiary weight to the opinions of the plaintiff's treating physician where opinion was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of the plaintiff's medical conditions, and was based on the plaintiff's subjective descriptions of pain) (citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Here, it is questionable whether Dr. Cohen qualifies as a treating physician (as opposed to an examining physician) as plaintiff asserts. The ALJ noted that from the evidence presented it appeared that Dr. Cohen saw plaintiff "on no more than a couple of occasions," and, according to plaintiff's testimony, last saw her in September 2003. (TR 15). Plaintiff objects to the ALJ's conclusion that the last time plaintiff saw Dr. Cohen was in September 2003. (TR 15).

Plaintiff claims that the ALJ improperly ignored Dr. Cohen's June 22, 2004 report in which Dr. Cohen indicates that he saw plaintiff on June 22, 2004. In fact, the ALJ refers to Dr. Cohen's June 2004 report (which is a filled-out state employee disability checklist) and specifically notes that Dr. Cohen's report indicates that plaintiff saw him on June 22, 2004. (TR 14). However, plaintiff clearly testified that she had not seen Dr. Cohen or any treating source for her mental problems since September 2003. (TR 161-162). Even if plaintiff was mistaken in her testimony and she actually did visit Dr. Cohen on June 22, 2004 as his records indicate, there is no evidence that Dr. Cohen provided any type of mental health treatment or counseling at that time. Rather, it appears from the 2004 report that he merely saw plaintiff to

7

enable him to fill out the checklist and provide plaintiff with support for her claim for social security benefits. (See TR 148-149).

In any event, Dr. Cohen's notes indicate that he saw plaintiff at most three times in three years: once in 2002 in connection with "another matter," once in 2003 to provide an opinion for plaintiff's application for social security benefits, and once in 2004 to follow up his 2003 report and findings of total disability. (Tr 148-151). Under Social Security regulations a "treating source" is defined as a physician who provides medical treatment or evaluation and has an "ongoing treatment relationship" with the patient. 20 C.F.R.§§ 404.1502, 416.902. Plaintiff testified that Dr. Cohen prescribed medication (Prozac) for her, but there is no evidence that he continued to monitor her treatment or oversee her care in any way between her visits in 2003 and 2004. Cf. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003)(finding psychiatrist who saw plaintiff once was a "treating physician" because he continued to review reports of her condition by other physicians, manage the provision of psychiatric medication and generally manage her care).

Even assuming Dr. Cohen qualified as a treating physician, the ALJ did not err in rejecting his opinion of plaintiff's total disability. The ALJ provided specific and legitimate reasons for rejecting his opinion. First, as noted above, the ALJ found that Dr. Cohen had limited contact with the plaintiff and had only seen plaintiff a few times. (TR 15). Second, the ALJ also found that Dr. Cohen's determinations concerning plaintiff's limitations, which appear to have been based on plaintiff's self-reporting, were contradicted by plaintiff's statements in the agency proceedings. Id.; see Andrews v.

8

Shalala, 53 F.3d at 1043 (ALJ properly rejected examining psychologists opinion where it was based on the self-reporting of plaintiff, who had proven to be unreliable, and was inconsistent with the written reports of other experts and plaintiff's testimony at the hearing). As the ALJ points out, Dr. Cohen states in his July 24, 2003 report that plaintiff is "essentially homebound" and dependent on friends and family to help with her basic life activities such as buying groceries, paying bills and travel. (TR 150-151). Plaintiff testified, however, that she lives alone, pays her own bills, and does her own housekeeping, laundry, shopping and cooking. (TR 158, 163-164). In her "Daily Activities Questionnaire" submitted in support of her benefits application, she reported that she gardened, ran errands, walked in the mall, cooked her own meals, shopped, engaged in social behavior and hobbies and had no difficulties with self-care. (TR 81-83).

Dr. Cohen's recommendations in his report are also inconsistent with his treatment of plaintiff. He states in his July 24, 2003 report that she was appropriate for psychiatric hospitalization due to her depression. (TR 150). However, after plaintiff indicated that she did not want to be hospitalized, there is no indication that Dr. Cohen recommended any regular psychotherapy for plaintiff or that he continued to regularly monitor her. Instead, the evidence suggests that he simply prescribed Prozac for plaintiff and sent her on her way. (TR 161-162).

Third, the ALJ found no medical evidence in the record to support the opinions of Dr. Cohen or weight him as a treating source. (TR 15). Dr. Cohen's reports contain no reference to any medical or psychological testing that would enable him to make his diagnoses. Instead, his 2003 report is based on interviews with plaintiff, her father and a family

friend. (TR 150). Plaintiff submitted no treatment notes or any other records from Dr. Cohen that would substantiate his opinions, despite the fact that plaintiff was represented by counsel in the proceedings and was specifically instructed by the Administration to submit "all medical records from one year prior to the alleged onset date and any other relevant medical, school or other records not already in the file." (TR 44).

Fourth, Dr. Cohen's opinion that plaintiff is totally disabled is contradicted by the findings of psychologist Rosa Colonna, PhD., who performed a consulting examination of plaintiff for the state agency. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (State agency medical consultants are "highly qualified physicians" who are also "experts in Social Security disability evaluation"). Dr. Colonna found that plaintiff had a mood disorder and borderline intellectual functioning. (TR 108). She performed psychological and intelligence tests on plaintiff and found that plaintiff had an IQ of 63.[4] Id. She assigned plaintiff a Global Assessment of Functioning ("GAF") score of 60.[5] Id.

---

[4]Dr. Colonna performed psychometric tests on plaintiff but found that the test results were invalid. She noted that plaintiff put forth poor effort and her poor performance was not indicative of her true capacity as demonstrated by her ability to relate information about her life to Dr. Colonna, drive a car and hold a job for over 30 years. (TR 105). Based on plaintiff's poor effort, Dr. Colonna found evidence of possible malingering. (TR 108).

[5]A GAF score between 51 and 60 indicates "[m]oderate symptoms (e.g., flat or circumstantial speech, occasional panic attacks) or moderate difficulty in social occupation, or school functioning (e.g., few friends, conflicts with peer or coworkers"). A GAF score between 61 and 70 includes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning . . . but generally functioning pretty well, has some meaningful

1 Contrary to Dr. Cohen's finding of total disability, Dr. Colonna found
2 that plaintiff could carry out short simple instructions, has the
3 capacity to make simple work-related decisions without difficulty and
4 the capacity to manage funds and do simple arithmetic computations. (TR
5 108). Indeed, as Dr. Colonna notes, prior to onset of her mood disorder
6 which was precipitated by a lawsuit and serious family dispute with her
7 brother, plaintiff held a job as a child care attendant for the
8 Montebello School district for thirty-three years. (TR 105, 108). Dr.
9 Colonna also found that, despite plaintiff's mood disorder, plaintiff
10 would be able to get along with supervisors, co-workers and peers. (TR
11 108). These findings are consistent with plaintiff's work history, her
12 self descriptions in her testimony at the hearing and her statements in
13 her application for benefits. (See TR 81-83; 158, 163-164).

14 Dr. Cohen's opinion of total disability is also contradicted by the
15 state agency board-certified psychiatrist who reviewed plaintiff's file,
16 including Dr. Colonna's report. He concurred with Dr. Colonna and found
17 that plaintiff is moderately limited only in her ability to carry out
18 and understand detailed instructions. (TR 111, 136) Although the agency
19 psychiatrist is a non-examining physician, his evaluation was based on
20 Dr. Colonna's thorough examination and testing of plaintiff and
21 plaintiff's own reports about her daily activities. See Andrews v.
22 Shalala, 53 F.3d at 1043 (ALJ could rely on non-examining physician's
23 opinion that contradicted the opinions of plaintiff's examining
24 physician where non-examining physician's opinion was supported by other

---

interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders p. 32 (4th ed. 1994 (DSM IV)).

11

expert opinions and the evidence in the case, including plaintiff's testimony).

In sum, the ALJ's reasons for rejecting Dr. Cohen's reports were legally sufficient and the ALJ's decision is free from material legal error and is supported by substantial evidence.

3. <u>Testimony of Plaintiff's Father</u>

Plaintiff also asserts that the ALJ erred by failing to consider the testimony of plaintiff's father without providing sufficient reasons for rejecting that testimony.

"[D]escriptions by friends and family members in a position to observe [plaintiff's] symptoms and daily activities have routinely been treated as competent evidence." <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987); <u>see also</u> <u>Crane v. Shalala</u>, 76 F.3d 251, 254 (1996). The ALJ may not discount witness reports solely because they were procured by plaintiff. <u>Crane v. Shalala</u>, 76 F.3d at 254 (citing <u>Ratto v. Secretary, Dept. of Health & Human Servs.</u>, 839 F. Supp. 1415, 1426 (D. Or. 1993)). Rather, if the ALJ wishes to discount the testimony of a lay witness, she must give reasons that are germane to that witness. <u>Crane v. Shalala</u>, 76 F.3d at 254 (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)).

Here, the ALJ took note of the testimony of plaintiff's father, who stated that he saw his daughter daily and that she was depressed, cried a lot, "didn't do much of anything," and had a problem getting along with people.[6] (TR 15, 165-166). There is no indication in the ALJ's

---

[6]The court observes that the father's written responses to the agency questionnaire he submitted with plaintiff's application for benefits state that plaintiff shops and cooks for her self, pays her own bills, is very neat, and is social and

12

report that he completely rejected the father's testimony; instead, it appears that he considered the father's statements, which primarily concerned the family dispute that apparently caused plaintiff to be evicted from her prior home and become depressed. (TR 167-168). Although the father testified that the plaintiff appeared depressed, he did not state, under questioning by plaintiff's attorney or the ALJ, that he believed that she could not work or that she could not significantly improve with regular psychotherapy and medication. As the ALJ points out, plaintiff admitted during her testimony that the Prozac she was taking was helpful and there is no evidence suggesting that, with consistent mental health treatment, plaintiff would have even a mild affective disorder. (TR 16, 163). Accordingly, the ALJ concluded, based on all the evidence before him, that plaintiff's mental impairments are not so limiting as to prevent her from performing her past relevant work.

Thus, the ALJ's decision is free from material legal error and supported by substantial evidence.

## CONCLUSION

Plaintiff clearly has severe impairments. A plaintiff who can still perform work in the national economy, even with a severe impairment, is not disabled as that term is defined in the Act. See generally Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991). Furthermore, if the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute

---

well-liked by others. (TR 82, 88-90).

13

```
```
its judgment for that of the Commissioner. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d at 1457.

DATED: 11/9/05

/ S /
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

14